Richard C. RUGG, Plaintiff-Appellant,†
v.

LABOR & INDUSTRY REVIEW COMMISSION
and Department of Employe Trust Funds,
Defendants-Respondents,

CITY OF KENOSHA, Defendant.

Court of Appeals

*No. 86–0677. Submitted on briefs November 11, 1986.—Decided
December 10, 1986.*
(Also reported in 400 N.W.2d 499.)

† Petition to review pending. This petition was not decided at
the time the volume went to press. Its disposition will be reported in a
later volume.

For the plaintiff-appellant, the cause was submitted on the briefs of *Bruce F. Ehlke* of *Lawton & Cates*, of Madison.

For the defendants-respondents, the cause was submitted on the brief of *Bronson C. La Follette*, attorney general, and *Warren M. Schmidt*, assistant attorney general.

Before Brown, P.J., Nettesheim and Moser, JJ.

BROWN, P.J.   Former Kenosha firefighter Richard C. Rugg appeals from a circuit court judgment which confirmed the Labor and Industry Review Commission's holding that Rugg is not eligible for special disability benefits pursuant to sec. 40.65, Stats. Because we agree that Rugg is not a "participating employe" under the relevant statutes, we affirm the judgment.

The following facts are undisputed. Rugg was a firefighter for the City of Kenosha from May 15, 1947 until February 1983. A medical examination performed prior to Rugg's becoming a firefighter revealed no evidence of heart impairment or disease. On February 21, 1983, Rugg suffered a massive anterior wall myocardial infarction, ventricular fibrillation and cardiac arrest. A subsequent catheterization revealed a large scar on the anterior wall of his heart, a moderate degree of aneurysm formation, and occlusive coronary artery disease. In October 1983, Dr. John Walker determined that Rugg was totally disabled for the purposes of being a firefighter and, at the end of December, Rugg retired because of his disabling heart condition. Pursuant to sec. 891.45, Stats., a presumption exists that Rugg's heart condition was caused by his employment as a firefighter.

In November 1983, Rugg applied for the duty disability benefit provided for by sec. 40.65, Stats. The Department of Employe Trust Funds opposed his application on the basis that the legislature had specifically excluded from the sec. 40.65 benefit program firefighters, including Rugg, who were participants in the old sec. 62.13(10), Stats. (1975), pension program. The DILHR examiner and the Labor and Industry Review Commission (LIRC) agreed and dismissed Rugg's application.

The issue is entirely one of statutory interpretation. The interpretation of statutes is a question of law and we are not bound by the decision of the circuit court or LIRC. *Wisconsin's Environmental Decade, Inc. v. DILHR*, 104 Wis. 2d 640, 644, 312 N.W.2d 749, 751 (1981). However, the construction and interpretation of a statute by an administrative agency which must apply the statute is entitled to great weight. *Id.* If the commission's legal conclusion is reasonable, the reviewing court will sustain it even though an alternative view may be equally reasonable. *Bruns Volkswagen, Inc. v. DILHR*, 110 Wis. 2d 319, 322, 328 N.W.2d 886, 888 (Ct. App. 1982).

Section 40.65, Stats., provides for a duty disability benefit for a "protective occupation participant" who is injured while performing his or her duties, or who contracts a disease due to his or her occupation, if the disability is likely to be permanent and causes the employee to retire. Sec. 40.65(4).

The question thus becomes whether Rugg is a "protective occupation participant." That term is defined in pertinent part in sec. 40.02(48), Stats., as "any *participant* whose principal duties are determined by the participating employer ... to involve ... active fire suppression or prevention ... " (emphasis added). Subsection (a) of sec. 40.02(48) further provides that " '[p]rotective occupation participant' is deemed to include any *participant* whose name is certified to the fund ... and who is a ... fire fighter ... " (emphasis added).

"Participant" means "any person included within the provisions of the Wisconsin retirement system by virtue of being or having been a participating employe whose account has not been closed .... " Sec. 40.02(45),

Stats. "Participating employe" is then defined, in pertinent part, as "an employe who . . . has met the requirements of s. 40.22." Sec. 40.02(46).

Section 40.22, Stats., states:

> Participating employes. (1) Each employe currently in the service of a state agency . . . or of a participating employer other than the state shall be included within the provisions of the Wisconsin retirement system as a participating employe of that state agency or employer, except as provided in sub. 4 . . . .
>
> . . . .
>
> (4) *Persons shall not be included within or receive benefits from the Wisconsin retirement system for any service for which a person:*
>
> (a) *Is subject to s. 40.19(4)* provided that contributions and benefits shall be paid as provided by s. 40.19(4). [Emphasis added.]

It is this statutory language which LIRC contends excludes Rugg from eligibility as a "participating employe" and thus as a "protective occupation participant" for the purposes of the sec. 40.65, Stats., duty disability benefit.

Section 40.19(4), Stats., referred to in sec. 40.22, Stats., relates to the transfer of authority over certain pension funds and benefits from village or city officials to the Department of Employe Trust Funds. Included among these pension funds and benefits is that provided for under sec. 62.13(10), Stats. (1975), the Firemen's Pension Fund, membership in which was closed in 1948. *See* sec. 62.13(10)(f), Stats. (1975). Subsection (g) of sec. 40.19(4) states:

> After January 1, 1982, each member of a pension fund created under s. . . . 62.13 . . . (10), 1975 Stats.,

who was an actively employed member of that fund on March 30, 1978, shall continue to have benefits and obligations determined in accordance with the applicable provisions of s. . . . 62.13 . . . (10), 1975 stats., but paid by the Wisconsin retirement system . . . .

Rugg was a member of the City of Kenosha's Firemen's Pension Fund, pursuant to sec. 62.13(10), Stats. (1975).

LIRC contends, and the circuit court agreed, that the statute sections described above, when read together, unambiguously provide that participants in the old Firemen's Pension Fund shall not be included in, or receive benefits (including the duty disability benefit) from, the Wisconsin Retirement System, but shall continue to have benefits determined pursuant to sec. 62.13(10), Stats. (1975), although such benefits will be paid by the Wisconsin Retirement System.

Rugg claims that a "common sense" reading of the relevant statutes in light of the legislative history demonstrates that the legislature did not intend to exclude municipal firefighters such as himself from duty disability benefits under sec. 40.65, Stats. He contends that, rather, the legislature intended merely that such employees may not receive a service pension under the Wisconsin Retirement System if they are or were eligible for such a pension under sec. 62.13(10), Stats. (1975).

On any question of statutory construction, the initial inquiry is to the plain meaning of the statute. *State Historical Society v. Village of Maple Bluff*, 112 Wis. 2d 246, 252, 332 N.W.2d 792, 795 (1983). If the statute is unambiguous, resort to judicial rules of interpretation and construction or to extrinsic aids is not permitted

449

and the words of the statute must be given their obvious and ordinary meaning. *Id.* at 252–53, 332 N.W.2d at 795; *State v. Denter*, 121 Wis. 2d 118, 123, 357 N.W.2d 555, 557 (1984); *Hucko v. Jos. Schlitz Brewing Co.*, 100 Wis. 2d 372, 376, 302 N.W.2d 68, 71 (Ct. App. 1981). The meaning of a statute must first be sought in its language, and if the language is plain the sole function of the courts is to enforce the statute according to its terms. *In re M.J.*, 122 Wis. 2d 525, 531, 362 N.W.2d 190, 194 (Ct. App. 1984). A statute is ambiguous if it is capable of being interpreted by reasonably well-informed people in two or more different ways. *State v. Hopson*, 122 Wis. 2d 395, 399, 362 N.W.2d 166, 168 (Ct. App. 1984).

Rugg claims that it is reasonable to read sec. 40.22, Stats., to mean that an employee who participated under a sec. 62.13(10), Stats. (1975), pension program is limited to receiving his service pension under that program and is prohibited from receiving a second pension benefit from the Wisconsin Retirement System. Thus, he argues, as long as he has not claimed or received a service pension benefit under the Wisconsin Retirement System, he has met the requirements of sec. 40.22.

We cannot adopt this strained interpretation of the statute. Section 40.22, Stats., draws no distinction between service pensions and disability benefits, as Rugg would have us conclude. The language is clear and must be given its ordinary and accepted meaning. *See State Historical Society*, 112 Wis. 2d at 252, 332 N.W.2d at 795. Section 40.22(4) unambiguously states that "[p]ersons *shall not be included within or receive benefits from* the Wisconsin retirement system for any service for which a person" is subject to sec. 40.19(4), Stats. All of Rugg's service was as a Kenosha firefighter, in

connection with which he was a participant in the Firemen's Pension Fund pursuant to sec. 62.13(10), Stats. (1975). All of his service is thus subject to sec. 40.19(4), and he therefore "shall not be included within or receive benefits from the Wisconsin retirement system." Sec. 40.22(4).

Rugg contends next that the sec. 40.65, Stats., duty disability benefit is not a benefit from the Wisconsin Retirement System, so that the sec. 40.22(4), Stats., exclusion does not apply to him with reference to such benefit. In support of this argument, he cites sec. 40.20, Stats., which states, "A Wisconsin retirement system is created, including the benefits provided by this subchapter [secs. 40.20 to 40.29, Stats.], the disability annuities provided by s. 40.63 and the death benefits provided by ss. 40.71 and 40.73." Because sec. 40.20 makes no reference to sec. 40.65, Rugg concludes that the sec. 40.65 disability benefit is not a benefit from the Wisconsin Retirement System.

Whether or not that is a correct interpretation, the duty disability benefit is, by the language of sec. 40.65, Stats., only available to protective occupation "participants," who are defined as persons included within the provisions of the Wisconsin Retirement System. Section 40.02(45), Stats. Members of the old sec. 62.13(10), Stats. (1975), pension fund are subject to sec. 40.19(4), Stats., and thus "shall not be included within . . . the Wisconsin retirement system." Section 40.22(4), Stats. Because Rugg cannot be included within the Wisconsin Retirement System, he is not a "participant." Thus, whether or not the sec. 40.65 benefit is a Wisconsin Retirement System benefit, its eligibility requirements are, by the use of the term "participant," based upon Wisconsin Retirement System membership.

451

By the same reasoning, we reject Rugg's contention that because the sec. 40.65, Stats., benefit is not tied to length of service, it is not a benefit "for any service" under sec. 40.22(4), Stats. Again, it is Rugg's status, not the nature of the benefit, which determines his ineligibility for the sec. 40.65 benefit.

We agree with the trial court's, and LIRC's, conclusion that the legislature has unambiguously excluded certain local pension fund members, including sec. 62.13(10), Stats. (1975), members such as Rugg, from eligibility for the sec. 40.65, Stats., duty disability benefit. Because the language is clear—indeed, we can scarcely conceive of how this complex statutory arrangement could have been expressed more clearly—resort to the legislative history which has been so thoroughly briefed for us is neither necessary nor permitted.

*By the Court.*—Judgment affirmed.