156 Wis.2d 526 (1990)
457 N.W.2d 498
IN the INTEREST OF R.W.S., A Child Under the Age of Eighteen Years:
R.W.S., Appellant,[]
v.
STATE of Wisconsin, Respondent.
No. 89-1826.
Court of Appeals of Wisconsin.
Oral argument February 20, 1990.
Decided May 2, 1990.
*528 On behalf of the appellant, there were briefs and oral argument by Virginia A. Pomeroy, assistant state public defender.
On behalf of the respondent, there was a brief and oral argument by William J. Roach, assistant district attorney.
Before Nettesheim, P.J., Brown and Scott, JJ.
SCOTT, J.
This juvenile case, originally a onejudge appeal, was ordered to be heard and decided by the panel because of the importance of the issues raised: whether the children's code authorizes an order of restitution on a charge which has been dismissed but read in, and whether it authorizes an order of restitution to an insurance company. We conclude the statute is broad enough to allow both. We affirm.
R.W.S. was adjudged delinquent on the basis of a petition (petition "G") alleging that he had burglarized his parents' home on July 1, 1988. A second petition (petition "H") alleged that he had also burglarized their home the day before, taking $900 from a business safe. Pursuant to a plea agreement, petition H was dismissed and read in. At disposition, R.W.S.'s current placement at Lad Lake Home for Boys was continued and he was ordered to pay $140 restitution on petition G. The state also requested $900 restitution on petition H. R.W.S. challenged that amount and was granted a hearing pursuant to sec. 48.34(5)(a), Stats.
*529 At the restitution hearing, R.W.S. testified that he entered his parents' house without their consent and took money from two desks, soda and liquor, as alleged in petition H. Although he acknowledged having burglarized the safe in 1986, he denied the portion of petition H alleging he took $900 from the safe on this occasion.
The trial court found the evidence clear and convincing that R.W.S. took the $900. R.W.S.'s subsequent motion for reconsideration was denied. This appeal follows.

RESTITUTION ON READ-IN
R.W.S. first contends that the children's code does not permit an order of restitution for delinquency petitions which have been dismissed but read in. He argues that secs. 48.335 and 48.34, Stats., plainly authorize a court to order dispositions only for offenses for which there has been an adjudication of delinquency. The state, by contrast, contends that a court may order restitution on a read-in once an adjudication of delinquency on a related charge has been made. We agree with the state.
[1-3]
Construction of a statute presents a question of law which we review de novo. In re I.V., 109 Wis. 2d 407, 409, 326 N.W.2d 127, 128 (Ct. App. 1982). We first determine if the statutory language is clear or ambiguous, the test being whether the statute is capable of being construed in two different ways by reasonably well-informed people. Id. at 409, 326 N.W.2d at 128-29. We conclude that secs. 48.335 and 48.34, Stats., are ambiguous because reasonable minds could differ over whether an adjudication of delinquency on each offense is a prerequisite for disposition.
*530 Section 48.335, Stats., provides for a hearing to determine the disposition of a case in which a child is adjudged to be delinquent. Section 48.34, Stats., prescribes the various dispositions available to a judge once she or he adjudges a child delinquent. We read these related statutory sections in pari materia. See In re G. and L.P., 119 Wis. 2d 349, 351-52, 349 N.W.2d 743, 744 (Ct. App. 1984). R.W.S. was adjudged delinquent on the allegations of petition G, thus making him subject to one or more of the sec. 48.34 dispositions.
[4]
Once the child has been adjudicated delinquent, sec. 48.34(2), Stats., grants the judge general authority to prescribe certain conditions "including reasonable rules for the child's conduct ... designed for the physical, mental and moral well-being and behavior of the child." The adult code similarly allows a judge when ordering probation to impose "any conditions which appear to be reasonable and appropriate." Sec. 973.09(1)(a), Stats. Restitution is one such reasonable and appropriate condition because it advances the objectives of probation. State v. Kuba, 150 Wis. 2d 618, 620, 443 N.W.2d 17, 18 (Ct. App. 1989).
Restitution for juvenile offenders also serves numerous purposes: accountability for one's acts, redress to victims, less severe sanctions, reduction of demands on the court system, and reduction of the need for societal vengeance. I.V., 109 Wis. 2d at 412-13, 326 N.W.2d at 130. We disagree with R.W.S.'s assertion that "[t]he connection between rehabilitation and financial responsibility in adult cases is simply not as applicable in juvenile cases." We fail to see why accountability for one's actions is better learned later in life.
Our supreme court has interpreted the general language in the adult statute as permitting restitution for a *531 read-in. State v. Gerard, 57 Wis.2d 611, 618-19, 205 N.W.2d 374, 378-79, appeal dismissed, 414 U.S. 804 (1973). While the adult and juvenile statutes differ in many respects, In re B.S., 133 Wis. 2d 136, 140, 394 N.W.2d 750, 752 (Ct. App. 1986), we hold that such a construction likewise furthers the goals of juvenile restitution without doing violence to the spirit or language of the statute.
Once authorized by sec. 48.34(2), Stats., to order restitution on a read-in, the judge must then proceed under sec. 48.34(5)(a) which describes how restitution is to be ordered. That section provides in part:
If the child is found to have committed a delinquent act which has resulted in damage to the property of another . . . the judge may order the child . . . to make reasonable restitution for the damage . . . if the judge, after taking into consideration the wellbeing and needs of the victim, considers it beneficial to the well-being and behavior of the child.
R.W.S. contends that the statute limits a restitution order to the act for which the adjudication of delinquency was made. We disagree, for, as the trial court noted, the very nature of a read-in implies that there has been an adjudication of delinquency. We read the statute as permitting an order of restitution once the threshold adjudication has been made. Therefore, such order may encompass restitution for a related, but read in, charge.
R.W.S. also asserts that a plea agreement resulting in a restitution order without a formal adjudication or admission of the crime offends the policies and goals of juvenile justice. "Punishing" unadmitted wrongdoing is improper, he contends, because it will not foster accountability for one's actions.
Again we disagree. The very fact that the amount was disputed indicates that the parties understood the *532 plea agreement to encompass potential restitution on petition H. After a full hearing with an opportunity to present witnesses, the court was satisfied that R.W.S. took the $900. R.W.S. does not dispute that had he been adjudged delinquent on petition H, restitution could have been ordered despite a continued protest of innocence.
Nor do we think that predicating disposition upon a formal adjudication is necessarily in the child's best interest. "[I]n common parlance `juvenile delinquent' is a term of opprobrium," and a delinquency adjudication may have grave and lasting consequences. Winburn v. State, 32 Wis. 2d 152, 162, 145 N.W.2d 178, 183 (1966). Thus, allowing disposition of offenses not formally charged may best serve the juvenile now and in his future. Informal dispositions similar to this are recognized elsewhere in the children's code. Secs. 48.245 and 48.32, Stats.
[5]
We conclude that subsecs. (2) and (5) of sec. 48.34, Stats., together allow restitution on a dismissed and read in charge as a reasonable rule designed for the child's moral well-being once there is a valid basis for a dispostional order. In other words, upon making the threshold delinquency adjudication, the court may dispose of the case by ordering restitution on a related charge which is dismissed but read in. See secs. 48.335 and 48.34, Stats.

RESTITUTION TO INSURANCE COMPANY
R.W.S. next argues that the children's code does not permit ordering restitution to an insurance company. He contends that because the adult statute was amended to expressly allow restitution to an insurer, sec. 1m, ch. 238, Laws of 1979, the failure to so amend the children's code *533 reflects a legislative intent that juveniles not pay restitution to an insurance company.
We are not persuaded that the conclusion inevitably follows from the premise. First, the provisions of the two restitution statutes are not so closely related in every respect as to necessarily give this principle vitality. I.V., 109 Wis. 2d at 413, 326 N.W.2d at 130. Secondly, R.W.S. does not cite any authority for the proposition that, in the adult code, courts could not order restitution to an insurer before being specifically authorized to do so by the amended statute.
Finally, there is nothing in the juvenile statute which expressly precludes reparation to an insurer or which confines repayment to the victim. Rather, it authorizes the court to order "reasonable restitution for the damage . . . after taking into consideration the wellbeing and needs of the victim." Sec. 48.34(5)(a), Stats.
Restitution to an insurance company furthers two important policy goals: avoidance of a windfall by delinquent or victim, and judicial economy by eliminating the need for a separate civil action by the insurer. In re P.J.N., 664 P.2d 245, 246 (Colo. 1983).
[6]
In I.V., we affirmed an order requiring a juvenile to pay restitution, a portion of which represented reimbursement to the burglary victim's insurance company. I.V., 109 Wis. 2d at 408-09, 326 N.W.2d at 128. That affirmance implicitly approved ordering restitution to an insurer. We explicitly approved it here. We hold that sec. 48.34(5)(a), Stats., coupled with the broad authority granted in sec. 48.34(2), fully authorizes an order of restitution to an insurer. See P.J.N., 664 P.2d at 246. To not so hold diverts the focus of the children's code away from the child. If a goal of restitution is to teach the *534 juvenile responsibility and accountability, whether the victim is insured should be irrelevant.
R.W.S. also asserts that sec. 895.035, Stats., the parental liability statute, precludes restitution to an insurer, contending that the statute imposes absolute liability upon his parents. He is mistaken. That statute does not apply if the parents do not have custody of the child. Section 895.035(1) unambiguously limits "custody" to certain situations pursuant to ch. 767, Stats., and to actual physical custody.
In so limiting the parameters of custody, a reprieve from absolute liability is given to parents who, like the S's, no longer have control of their child. When he committed these offenses, R.W.S. was residing at Lad Lake School for Boys, having been ordered there upon an earlier delinquency adjudication. He was estranged from his parents and was not welcome in their home. The S's did not have "custody" of R.W.S. within the meaning of the statute. Consequently, it does not apply.

WELL-BEING OF CHILD
Reasonable restitution may be ordered if deemed beneficial to the child's well-being and behavior. Sec. 48.34(5)(a), Stats. R.W.S. argues that the trial court did not consider his well-being when it ordered restitution on petition H. We disagree.
At the disposition hearing, the court found it to be in R.W.S.'s best interest to continue his placement at Lad Lake and to place upon him certain conditions, one of which was restitution. At the hearing on the disputed $900 restitution, the court found R.W.S. responsible for the theft of that money, noted that he had chosen "to victimize his own parents in his delinquent activities," *535 and that a good-faith effort at repayment was thus called for:
That means a regular payment schedule once you are employed, and that you pay at least half of your earnings that is your take-home paytowards restitution so that you get in the habit of paying back the money the Court has found you responsible for taking.
The court was clearly speaking of accountability and responsibility, both of which impact upon R.W.S.'s wellbeing.
[7]
At the reconsideration hearing, too, the court focused on R.W.S.'s well-being, dwelling at length on the rehabilitative aspects of restitution. It also expressly recognized that R.W.S., a student and part-time employee, was perhaps limited in his earning ability. The court therefore determined that, while full restitution was deemed to be in his best interest, a good-faith effort at repayment would suffice. R.W.S.'s well-being and best interests were thoroughly considered.
By the Court.Orders affirmed.
NOTES
[] Petition to review granted.